UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Allison May, ) | Civil Action No.: 1-05-cv-0752-MBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER and OPINION** |
| ) | |
| City of North Augusta and Skip Grkovic, ) | |
| in his individual capacity, ) | |
| ) | |
| Defendants. ) | |
| ) | |

On March 10, 2005, Plaintiff Allison May ("Plaintiff") filed this action against her employer, the City of North Augusta ("Defendant"), alleging gender discrimination, retaliation, and sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. She also alleges a violation of her First Amendment right to free speech, pursuant to 42 U.S.C. § 1983; violation of South Carolina public policy; and claim for civil conspiracy against her supervisor, George M. "Skip" Grkovic ("Grkovic").

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pretrial handling. Defendants moved for summary judgment on September 15, 2006. See Fed. R. Civ. P. 56. Plaintiff filed a memorandum in opposition on November 15, 2006. Defendants filed a reply on November 27, 2006. On June 11, 2007, the Magistrate Judge filed a Report and Recommendation in which he recommended that Defendant's motion for summary judgment be granted. Plaintiff filed objections ("Plaintiff's Objections") to the Report on July 26, 2007.[1]

---

[1] Plaintiff objected only to the Magistrate Judge's recommendation that summary judgment be granted as to the Plaintiff's claims of gender discrimination, retaliation, hostile

The Magistrate Judge makes a only recommendation to this court. The recommendation has no presumptive weight. Upon review of the Magistrate Judge's recommendation, this court bears the responsibility for making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

The facts are thoroughly set forth in the Report and Recommendation. In August 1998, Plaintiff accepted a position as Senior Planner with the City of North Augusta ("the City") Department of Economic and Community Development ("the Department"). (Pl. Dep. 16; Grkovic Dep. 58). Her supervisor was department director George M. "Skip" Grkovic, who had recruited Plaintiff and encouraged her to apply for the position. (Pl. Dep. 15). As Senior Planner, Plaintiff's responsibilities included zoning compliance and residential site plan review, sign permitting, website maintenance, and production of the City of North Augusta's newsletter. (Pl. Dep. 16). Prior to assuming her role as Senior Planner, Plaintiff had no formal training and minimal experience in municipal planning. (Pl. Dep. 17). Not long after Plaintiff was hired, her title was changed to Planner/Development Project Coordinator. (Pl. Dep. 18). The change in title did not affect Plaintiff's job duties. (Pl. Dep. 18).

---

work environment, and violation of her civil rights under Section 1983. Plaintiff did not object to the recommendation that summary judgment be granted as to the Plaintiff's two state law claims for public policy discharge and civil conspiracy. In the absence of objections to the Report, this court is not required to give any explanation for adopting the recommendation. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

As an employee of the Department, Plaintiff receives an annual performance review, conducted by Grkovic. The review surveys several categories of job performance, including knowledge of job, judgment, quality of work, attendance, and cooperation. (Pl. Ex. 2, 3, 5). Each category includes several subcategories. For each subcategory, Plaintiff is graded on a five-point scale, with 1.0 representing "substantially below expectations" and 5.0 representing "substantially exceeds expectations." A 3.0 on this scale represents "meets expectations." The point totals in each category are averaged and weighted to calculate an overall rating score. If an employee scores below a 3.0, she is ineligible for a Merit Performance Adjustment ("MPA"), or pay increase. (Pl. Dep. 42, 80).

From 1999 to 2002, Plaintiff's year-end performance evaluations remained above the "meets expectations" threshold. In each of these years, Plaintiff was eligible for, and received, an MPA. However, after her first year-end review, conducted on November 30, 1999, her scores declined every year until 2005. In Plaintiff's first three evaluations, Grkovic consistently indicated that Plaintiff needed to improve her "understanding of the planning and land use regulation process." (Pl. Dep. Ex. 2-5). He also gave Plaintiff low marks for her inability to complete tasks on time, which he attributed in part to her poor understanding of regulatory standards.

By August 2002, Grkovic had decided to hire a full-time planner and submitted a budget request with the City to do so. (Grkovic Dep. 105). Grkovic's comments on Plaintiff's 2002 performance review reflected this change. "Allison's role in the planning and zoning administration activities of the Department will be reduced with the addition of a Planner to the staff." (Pl. Dep. Ex. 2). According to Plaintiff, she did not meet the advertised requirements for the full time planner position. She did not apply. (Pl. Dep. 31). Scott Sterling was eventually

hired to fill the position in the Fall of 2003. (Pl. Dep. 32). Mr. Sterling has a degree in city planning and two to three years planning experience. (Grkovic Dep. 132).

On September 29, 2003, Grkovic wrote Plaintiff a memorandum indicating that her job responsibilities in the areas of zoning and development regulation would be temporarily reduced so she could focus more on her marketing project assignments. Grkovic claimed "the quality of [Plaintiff's] work in the review of residential site plans and sign permits has been below what is expected and acceptable." (Def. Ex. 1). In the memorandum, Grkovic expressed three particular concerns. First, he noted that Plaintiff had recently approved an illegal swimming pool permit that Grkovic had previously denied. Second, Grkovic called attention to a recent instance where Plaintiff had approved a sign in violation of applicable zoning standards. Third, Grkovic indicated to Plaintiff that her emotional reactions to his directions and suggestions were "unprofessional and [] not acceptable." Id. Grkovic asked Plaintiff not to discuss his memorandum with other personnel until they had a chance to review the matter together. Plaintiff's zoning and regulatory duties were assigned to Matthew Taylor, a "code enforcement officer," who was otherwise responsible for enforcing sign ordinances. (Pl. Dep. 26-27).

On November 30, 2003, Grkovic conducted Plaintiff's 2003 performance review. In this evaluation, Plaintiff received her first "below expectations" rating – a score of 2.92 – which rendered her ineligible for an MPA. (Pl. Ex. 2). Grkovic's assessment cited Plaintiff's difficulty completing tasks on time, organizing and planning tasks and projects, listening, and following directions. On January 28, 2004, Plaintiff challenged Grkovic's evaluation. On February 11, 2004, Grkovic notified Plaintiff that the change in her job duties would be permanent, and that her new title would be Community Development Project Coordinator. Soon

after, Plaintiff met with Grkovic and Diana Miller, the City of North Augusta's Human Resources Manager, to review her 2003 performance appraisal and set performance goals for the new year. (Miller Dep. 55-56).

According to Plaintiff, Grkovic often subjected her to harsh treatment. (Pl. Dep. 85). Grkovic has been described as "dismissive" and "rude" (Pl. Dep. 85), "tough," (Miller Dep. 49), "difficult to work with" and a "taskmaster" (Martin Dep. 12), "demeaning and a very strong personality" (Gilliland Dep. 37, 40), "intimidating and critical" (Wegner Aff.), and "mean spirited" (Mims Aff.). Female employees have suspected that Grkovic is biased towards women and treats them differently than he does the male employees he supervises.[2] (Pl. Dep. 97-100, Gilliland Dep. 37-44, Wegner Aff., Mims Aff.). Sometime prior to the removal of Plaintiff's planning duties in September 2003, she began contacting Diana Miller ("Miller"), the City's Manager of Human Resources, with complaints about Grkovic. According to Miller, Plaintiff was very upset about Grkovic, and reported that she had "difficulty communicating with him and that she felt she couldn't please [him], or do her job . . . to his satisfaction." (Miller Dep. 47).

---

[2] In her deposition, Plaintiff cited five instances of what she believed to be different treatment. First, Plaintiff claimed that when the Department's secretary position has been vacant, she has "been the one that has had to answer the phone, take messages, take minutes for planning commission meetings, cover during lunch, cover during vacations." To Plaintiff's knowledge, Grkovic had never asked any of the male employees to perform these secretarial tasks. (Pl. Dep. 96). Second, Plaintiff has claimed that when she was hired, she was told not to worry about her inexperience as a planner and that she would be trained. However, Grkovic never let her sit in on the meetings with him. Mr. Sterling, the new full time planner, sits in on all the meetings. Third, Plaintiff says she was graded harshly for not being in her work area. But when Michael Baldy, GIS/GPS planner, was absent from his work area, Grkovic procured him a beeper. (Pl. Dep. 98). Fourth, Plaintiff argues that although she never received a vehicle, Scott Sterling was allowed to drive a company car. (Pl. Dep. 100). Finally, Plaintiff is the only person Grkovic has ever written up and taken responsibility away from because of an error in her permitting, even though he has acknowledged that other employees have made permitting mistakes. (Grkovic Dep. 142). Grkovic said when other employees had made mistakes, he had "readjusted some responsibilities" and increased oversight where necessary, but had not made any major changes to their job duties. (Grkovic Dep. 88, 105).

5

Miller suspected that Plaintiff and Grkovic's problems were largely the result of "not being able to communicate with each other." Id.  Miller spoke with Grkovic about Plaintiff's complaints, talked to him about communication problems, and "encouraged him to please try and talk to [Plaintiff]." (Miller Dep. 53, 54).

Plaintiff also reported to Miller that Grkovic had a habit of "groping" his crotch.[3]  This behavior, according to Plaintiff, was observed and discussed by many of his employees and colleagues, both male and female.  According to Plaintiff, Grkovic's behavior was never accompanied by any comments, expressions, or gestures. (Pl. Dep. 91).

Sometime prior to August 19, 2004, the Department recommended approval of a site plan for a Waffle House in close proximity to property owned by Plaintiff.  Plaintiff informed Scott Sterling, the City Planner, that she objected to the proposed plan.  On August 19, the Planning Commission met to consider and hear public comment on the plan.  Prior to the meeting, Plaintiff informed Grkovic that she intended to speak in opposition to the proposed plan. Plaintiff appeared before the commission and expressed her views.

On August 31, 2004, Grkovic sent Plaintiff a memorandum describing Plaintiff's decision to appear before the Planning Commission as "inappropriate, unprofessional, and disrespectful to the Department." (Pl. Dep. Ex. 7).  Grkovic claimed that her appearance before the Commission had confused certain attendees, who were unclear whether Plaintiff was speaking in her capacity as a private citizen or a City employee.

---

[3] According to Tish Mims, a former employee of Grkovic's, Grkovic would do so by "placing his hands in the front of his parts in the crotch area or by placing his right hand in his pocket and appearing to 'jiggle' his genitals." (Mims Aff.).  See also Pl. Dep. 89, 90.

On September 8, 2004, Plaintiff filed a charge of sex discrimination with the South Carolina Human Affairs Commission ("SCHAC").  (Def. Mem. 26).

On September 9, 2004, Plaintiff responded in a memorandum that she had appeared before the Planning Commission as a private citizen to speak on a mater of public concern.  (Def. Mem 26).  Grkovic replied to Plaintiff on September 27.  In this memorandum, Grkovic was careful to point out that his August 31 memorandum was not a reprimand, but "related to the manner in which you chose to exercise those rights, the level of knowledge you exhibited, and the degree of respect you showed for the department in making a presentation."  Id.

Grkovic cited Plaintiff's decision to appear before the Planning Commission in her 2004 performance evaluation, conducted on November 30, 2004.  In this evaluation, Plaintiff again scored "below expectations" – a score of 2.88 – which disqualified her from an MPA.  Grkovic gave Plaintiff low marks for her judgment, based in part on her appearance before the Commission.[4]  "Allison showed a significant lack of judgment in her appearance before the Planning Commission related to a downtown area site plan application.  There were a number of other approaches that she could have taken to better understand the situation and alternative solutions."  (Pl. Dep. Ex. 3).  Grkovic also noted other problems, giving Plaintiff low marks for her ability to listen, follow directions, understand expectations, and organize her tasks.  Grkovic also cited Plaintiff's absenteeism and lack of enthusiasm.

On March 10, 2005, Plaintiff instituted this action.

---

[4] Grkovic noted another specific example of Plaintiff's poor judgment, which he described as "her approach to modifying the utility bill insert mailing schedule as well as her personal desires."

7

II.  DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the moving part makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial.  Id. Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law.  McKinney v. Bd. of Trustees of Mayland Cmty. College, 955 F.2d 924, 928 (4th Cir. 1992).

A.  Disparate Treatment Claim

Plaintiff alleges gender discrimination under Title VII.  Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  In the absence of direct evidence of discrimination, Plaintiff may proceed under the McDonnell Douglas burden-shifting framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Causey v.

Balog, 162 F.3d 795, 802 (4th Cir. 1998). Under this method, Plaintiff must first establish a prima facie case of discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). Once Plaintiff establishes a prima facie case of discrimination, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's treatment. See McDonnell Douglas, 411 U.S. at 802. If Defendant articulates such a reason, Plaintiff bears the ultimate burden of persuasion and must show, by a preponderance of the evidence, that Defendant's proffered reason for the treatment is pretextual. See id. at 804. Although the evidentiary burdens shift between the parties under the McDonnell Douglas framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, (1981); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

   *1. Prima Facie Case*

Generally, the prima facie case for a discrimination claim under Title VII requires a plaintiff to show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her job and her performance was satisfactory; and (4) other employees outside the protected class were treated more favorably.[5] See Love-Lane v.

---

[5] A different analysis is used in cases involving the enforcement of disciplinary actions. In this context, the plaintiff most show that: (1) she is a member of a protected class, (2) she "engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin," and (3) "disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." Anthony v. South Carolina Dep't of Corrections, No. 05-1636, 2007 WL 1032440, at *4 (D.S.C. March 30, 2007) (quoting Moore v. Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985)). Plaintiff has alleged that she was reprimanded more harshly for her mistakes than her male coworkers. However, the court finds that this is not a disparate discipline case. Such cases typically involve employees disciplined for acts of egregious conduct outside the realm of merely poor job performance. See Forrest v. Transit Mgmt. of Charlotte, Inc., No. 06-2245, 2007 WL 2348698 (4th Cir. August 15, 2007) (employee

Martin, 355 F.3d 766, 787 (4th Cir. 2004). The Magistrate Judge found that (1) Plaintiff was a member of a protected class, and (2) that the removal of Plaintiff's planning duties and job title, and her evaluations in 2003 and 2004 that deprived her of a merit-based cost of living increase, constituted adverse employment actions. As to the third prong of Plaintiff's prima facie case, however, the Magistrate Judge found that Plaintiff was not meeting her employer's legitimate job expectations in 2003 and 2004, which resulted in the poor performance evaluations and the removal of her planning duties. Plaintiff asserts that the Magistrate Judge erroneously concluded that she had failed to produce evidence that her job performance was satisfactory. The court disagrees.

Defendant has proffered evidence that throughout the course of her employment, Plaintiff had trouble meeting Grkovic's expectations in several different areas.[6] To establish a genuine

---

disciplined for a physical altercation with a coworker); Moore, 754 F.2d 1100 (police officer demoted for fixing tickets); Jenks v. City of Greensboro, 495 F. Supp. 72d 524 (M.D.N.C. 2007) (firefighter terminated because she assaulted a civilian); Anthony, 2007 WL 1032440 (employee charged with gross negligence and falsification of official inspection reports).

[6] Grkovic noted in Plaintiff's first review, conducted six months into her employment with the City, that Plaintiff was a "fairly quick study in planning areas and issues," but she would benefit from "[p]articipation in planning and economic development seminars and training sessions and self study. . . ." (Pl. Dep. Ex. 2). In Plaintiff's 2000 evaluation, Grkovic commented that "Allison should work on inproving [sic] her understanding of the planning and land use regulation process. Her ability to complete project reviews will be improved with more research and possibly more formal training in zoning administration." Id. Grkovic further noted that Plaintiff "should work on improving her ability to listen to and follow directions on technical assignments or those assignments that specific regulations and standards apply." Id. In Plaintiff's 2001 evaluation, Grkovic observed, "Allison needs to expand her knowledge of planning and land use regulation processes. More timely research and formal training should be pursued in 2002." Id. By Plaintiff's 2002 evaluation, Grkovic had decided that "Allison's role in the planning and zoning administration activities of the Department will be reduced with the addition of a Planner to the staff." Id. By 2003, Grkovic's comments indicate that Plaintiff was no longer involved in planning and zoning. However, Grkovic indicated that Plaintiff's work on the newsletter could use improvement. Grkovic also noted that Plaintiff continued to experience difficulty completing tasks on time, listening, and following directions. Grkovic observed that

issue of material fact as to whether she was performing adequately, Plaintiff need only counter this evidence with evidence of her own demonstrating that Grkovic's assessment was wrong. See King v. Rumsfeld, 328 F.3d 145, 150 (4th Cir. 2003). Plaintiff has failed to present any evidence that Grkovic was incorrect in his assessment of Plaintiff's non-planning duties, notably her absenteeism, inability to complete tasks in a timely manner, organizational shortcomings, and trouble listening and following directions. Plaintiff's objections to the Magistrate Judge's finding that she was not meeting her employer's legitimate job expectations are therefore without merit.

Plaintiff challenges Grkovic's assessment of her performance only with respect to her planning and regulatory duties. Plaintiff alleges that two city managers believed "her work for them was more than satisfactory"; that Charles Martin, the City Manager, found her work preparing city events to be "wonderful"; and that the building superintendent with whom she worked to approve the erroneous swimming pool site plan, which ultimately contributed to the removal of her planning and regulatory duties, believed there was nothing wrong with the approval.

Among the proffered evidence, only the testimony from the building superintendent who participated in the swimming pool site plan approval would aid Plaintiff in demonstrating that Grkovic's assessment of her job performance was inaccurate. At most, this evidence establishes a genuine issue of fact as to whether the approval of the site plan for the swimming pool was erroneous. Standing alone, however, it fails to establish a genuine issue of material fact as to

---

Plaintiff experienced occasional difficulty organizing and planning tasks and projects. In Plaintiff's 2004 performance evaluation, Grkovic again gave Plaintiff low marks for her ability to listen, follow directions, and organize her tasks. Grkovic also cited Plaintiff's absenteeism, lack of enthusiasm, and poor judgment.

11

whether Plaintiff was performing to her employer's legitimate job expectations.  See Anderson, 477 U.S. at 248 (noting that Rule 56(c) provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (emphasis in original).

Plaintiff's perceived job performance for city officials other than Grkovic, in matters other than those for which he deemed her performance inadequate, is not relevant to this inquiry.  See King, 328 F.3d at 150.  Plaintiff's evidence that she performed satisfactorily for other city officials has no bearing on the question of whether she did so for Grkovic, her supervisor.  See Evans v. Technologies Applications & Svc. Co., 80 F.3d 954, 960-61 (4th Cir. 1996).  Plaintiff's objections are without merit.

*2. Pretext*

Plaintiff next asserts that the Magistrate Judge erred in finding that, even if Plaintiff made out a prima facie case, Defendants articulated a legitimate, nondiscriminatory reason for the adverse employment actions.  The court disagrees.

Defendants aver that Plaintiff's poor performance, not discriminatory animus, led to the removal of her planning duties and her poor performance evaluations.  Plaintiff asserts that this explanation is unworthy of credence.  Plaintiff must prove pretext "either by directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Burdine, 450 U.S. at 256.  As the Magistrate Judge correctly found, the record reveals no evidence that Defendants

were motivated by discriminatory animus or that their proffered explanation for Plaintiff's treatment is unworthy of credence. Plaintiff's objection is without merit.

B. Hostile Work Environment Claim

The Magistrate Judge found that Plaintiff failed to establish a claim for hostile work environment because she has not presented sufficient evidence demonstrating that Grkovic's conduct, while offensive, was based on Plaintiff's gender. Plaintiff argues that the Magistrate Judge erred in concluding that Plaintiff failed to establish a hostile work environment. The court disagrees.

In order to prevail on a hostile work environment claim, Plaintiff must establish that the offending conduct was (1) unwelcome, (2) based on her sex, (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) imputable to her employer. Ocheltree v. Scollon Prod., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In order to establish the second prong of this test, Plaintiff must show that she "is the individual target of open hostility because of her sex, or . . . harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." Ocheltree, 335 F.3d at 331-32 (quoting Oncale v. Sundowner Offshore Servs. Inc., 523 U.S. 75, 80 (1998) (internal citations omitted)).

Plaintiff has alleged only one instance of verbal abuse that could support an inference of gender-based animus: when Grkovic warned Plaintiff that she "[didn't] want to get into a pissing match with someone who can write his name in the snow." (Pl. Dep. 94). However, it is well-established that even if "offensive and entirely unacceptable, one comment alone cannot support a hostile work environment claim." Parker v. Smithfield Packing Co., Inc., No. 06-0468, 2007

13

WL 983845 at *5 (E.D. Va. March 26, 2007) (discussing Jordan v. Alternative Res. Corp., 458 F.3d 332 (4th Cir. 2006)).

Plaintiff has also failed to demonstrate that Grkovic's habit of "groping" his crotch was either directed at her or based on her sex. According to Plaintiff, many men and women in the Department had observed Grkovic's behavior and it was never accompanied by any sexualized comments, facial expressions, or gestures. (Pl. Dep. 91). Based on this testimony, the Magistrate Judge found that Plaintiff has failed to show that Grkovic's behavior, although offensive, was directed at Plaintiff or any other woman because of gender. The court agrees. Plaintiff's objections are without merit.

C. Retaliation Claim

Plaintiff next asserts that the Magistrate Judge erred in finding that Plaintiff failed to make a prima facie case of retaliation because she failed to establish a causal connection between her protected activity and the adverse actions she suffered. The court disagrees.

In order to establish a prima facie case of unlawful retaliation, an employee must show "(1) that she engaged in protected activity; (2) that her employer took an adverse employee action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action." Parker, 2007 WL 983845, at *6 (quoting Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004)). An employer may defend itself by producing evidence of a legitimate, non-discriminatory reason for taking the adverse employment action. Id. If the employer produces such reasons, the employee must demonstrate that the proffered reasons are pretextual. Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997).

Plaintiff objects to the Magistrate Judge's Report by arguing that "retaliation was always swift and immediate." Plaintiff's Objections, 5. With regard to Plaintiff's conversations with Miller, Plaintiff has offered nothing more specific than that this protected activity took place prior to September 2003, when Grkovic removed her planning duties.[7] The court agrees with the Magistrate Judge's finding that this allegation is insufficient to establish "very close" temporal proximity. See Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (cases relying solely on temporal proximity to establish causation must show that the employer's knowledge of the protected activity and the adverse employment action were "very close"). Plaintiff's objections are without merit.[8]

D. First Amendment Claim

Plaintiff has alleged that Defendants retaliated against her for exercising her First Amendment right to free speech. Plaintiff argues that her written reprimand and her "below expectations" 2004 performance assessment constituted retaliatory employment actions. The

---

[7] Plaintiff alleges in her objection to the Magistrate Judge's report that she first complained of poor treatment in 2001. Plaintiff does not cite any authority for this assertion, and the court finds that it is not supported in the record. However, if true, this evidence would only hinder, rather than help, Plaintiff's claim that her protected activities and adverse actions were temporally proximate, because it would establish a two-year gap between the first instance of protected conduct and the first alleged retaliatory action. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (holding that "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."); Parrott v. Cheney, 748 F. Supp. 312 (D. Md. 1989) (noting that five months between protected activity and adverse action enough to negate causal connection).

[8] Plaintiff's points of objection do not appear to include the Magistrate Judge's refusal to consider the possibility Defendants retaliated against Plaintiff for the charge of discrimination she filed with SCHAC on September 8, 2004. Plaintiff has never alleged that Defendants were made aware of this charge prior to the 2004 performance evaluation. Therefore, the Magistrate Judge did not err in excluding the SCHAC charge from his analysis of Plaintiff's retaliation claim.

Magistrate Judge found that Plaintiff failed to show her rights had been violated because she has not shown that she suffered a retaliatory action. The court disagrees with this particular finding, but concurs in the result.

In order to determine whether Plaintiff has been unlawfully retaliated against for exercising her First Amendment freedom of speech, she must show: (1) she spoke as a private citizen on a matter of public concern; (2) her interest in the expression at issue must have outweighed the Department's interest in providing effective and efficient services to the public; and (3) there was a sufficient causal nexus between Plaintiff's speech and a retaliatory employment action. Smith v. Frye, 488 F.3d 263, 267 (4th Cir. 2007) (citing Ridpath v. Bd. of Governors of Marshall Univ., 447 F.3d 292, 316 (4th Cir. 2006)).

Plaintiff argues that the Magistrate Judge erred because the written reprimand Plaintiff received for her appearance before the Planning Commission, compounded with her 2004 performance evaluation, which rendered her ineligible for a merit pay increase, amounts to a retaliatory act. In the First Amendment context, a formal, written reprimand included in an employee's file may constitute a retaliatory act. See Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir. 1999). In this case, the parties dispute whether Grkovic's letter to Plaintiff criticizing her appearance before the Planning Commission was placed in her employment file. Because that question is relevant in determining whether Grkovic's letter constituted a formal reprimand, the court declines to grant summary judgment on this ground. The court also finds that Plaintiff's "below expectations" performance evaluation, which rendered her ineligible for a pay increase, could reasonably constitute a retaliatory employment action.

Nevertheless, Plaintiff has failed to establish a sufficient causal nexus between her speech and her poor performance evaluation. In order to establish a prima facie case of First Amendment retaliation, Plaintiff must demonstrate that her protected speech was a "substantial" or "motivating" factor in the negative performance evaluation. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, at 270-71 (1977)). Although Grkovic specifically referenced Plaintiff's appearance before the Planning Commission in his negative assessment of Plaintiff's judgment, this assessment was but one of many negative assessments in Plaintiff's 2004 performance evaluation. Plaintiff has not put forth any evidence indicating that Grkovic's disapproval of her appearance before the Planning Commission was a substantial or sufficiently motivating factor in the adverse quality of her overall performance rating. The court finds that Plaintiff has failed to establish a sufficient causal connection between her speech and the adverse affect of the 2004 performance evaluation, and therefore cannot prevail on her claim for violation of her First Amendment freedom of speech.

## III. CONCLUSION

For the reasons stated, the court hereby **grants** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

s/Margaret B. Seymour
Margaret B. Seymour
United States District Judge

September 27, 2007
Columbia, South Carolina